AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Louisiana

| | |
|---|---|
| United States of America<br>v.<br><br>AREION BANKS<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.   25-MJ-105

**SEALED**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of March 2024 to on or about November 18, 2024 in the parish of _____Orleans_____ in the

____Eastern____ District of ____Louisiana____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 666(a)(1)(A) | Theft concerning a program receiving federal funds |
| 18 U.S.C. § 666(a)(2) | Bribery concerning a program receiving federal funds |
| 18 U.S.C. § 1343 | Wire fraud |
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 371 | Attempt and conspiracy to commit the above-described offenses |

This criminal complaint is based on these facts:

See attachment.

☑ Continued on the attached sheet.

/s/Brent Korhn
_____
*Complainant's signature*

Special Agent Brent Korhn, FBI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:    06/13/2025
_____
*Judge's signature*

City and state:    New Orleans, Louisiana

Hon. Janis van Meerveld, U.S. Magistrate Judge
_____
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CASE NO. 25-MJ-105** |
| **v.** | * | **SECTION: MAG** |
| **AREION BANKS** | * | **FILED UNDER SEAL** |
| | * | |

\*     \*     \*

<u>**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**</u>

I, Special Agent Brent R. Korhn, having been duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1.     I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed for approximately twelve years. I am currently assigned to the FBI New Orleans Field Office and am responsible for investigating matters of public corruption. As a result of my experience and training, I am familiar with the strategy, tactics, methods, tradecraft, and techniques of public officials and public employees engaged in corrupt practices.

2.     The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including

other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. This affidavit includes only those facts I believe are necessary to establish probable cause and does not include all of the facts uncovered during the investigation.

## OVERVIEW AND PURPOSE OF AFFIDAVIT

3.     This affidavit is being submitted in support of an application for a complaint and arrest warrant charging **AREION BANKS** with theft concerning a program receiving federal funds, in violation of Title 18, United States Code, Section 666(a)(1)(A), bribery concerning a program receiving federal funds, in violation of Title 18, United States Code, Section 666(a)(2), wire fraud, in violation of Title 18, United Staes Code, Section 1343, bank fraud, in violation of Title 18, United Staes Code, Section 1344, attempt to commit the above-described offenses, and conspiracy to commit those offenses, in violation of Title 18, United States Code, Section 371.

4.     Based on my training and experience and the facts as set forth in this affidavit, probable cause exists to believe that **BANKS** committed violations of Title 18, United States Code, Sections 666(a)(1)(A), 666(a)(2), 1343, 1344, attempt to commit the above-described offenses, and conspiracy to commit those offenses, in violation of Title 18, United States Code, Section 371.

## FACTS IN SUPPORT OF PROBABLE CAUSE

*Background*

5.     The Orleans Parish Sheriff's Office (OPSO) is an agency of Orleans Parish whose mission includes the operation of the Orleans Parish Justice Center, which includes a jail. Both OPSO and Orleans Parish received over $10,000 in federal funds during each pertinent calendar year, including calendar year 2024, with OPSO specifically receiving over $10,000 of funding

from the United States Department of Justice (US DOJ) through the US DOJ Byrne Discretionary Grants Program.

6.    **AREION BANKS (BANKS)** is a resident of Slidell, Louisiana.

7.    ▮▮▮▮▮▮▮ was employed as Grants Manager by the Orleans Parish Sheriff's Office (OPSO) from August 2022 until the termination of his employment in November 2024. Part of ▮▮▮ job responsibilities included paying non-profits that provide educational programming in support of the health and wellness of inmates at the Orleans Justice Center. A large portion of the programming was funded by a United States Department of Justice Byrne Discretionary Community Project Funding grant.   As such, ▮▮▮ was an "agent" of OPSO, as that term is defined in Title 18, United States Code, Section 666(d)(1).

*Case Inception*

8.    OPSO arrested ▮▮▮ in November 2024 for theft of grant funds, among other offenses. ▮▮▮ was alleged to have misused his official position at OPSO to cause the issuance of two checks, totaling $82,000, from OPSO to a fake non-profit that ▮▮▮ owned and controlled without the knowledge or authorization of OPSO.

9.    In about February 2025, the FBI met with representatives of OPSO. During this meeting, the FBI learned of another scheme involving ▮▮▮ BANKS, and others. That scheme is described in further detail below.

10.    In March 2025, United States Magistrate Judge Karen Wells Roby signed and issued a search warrant authorizing the review of digital evidence related to ▮▮▮ namely information associated with certain Apple IDs.

11.    In April 2025, the FBI interviewed ▮▮▮ and obtained a statement from him regarding his activities with BANKS.

*Conspiracy to Embezzle from OPSO and Bribery*

12.    ▬▬▬▬ met **BANKS** in about March 2024 through an intermediary.

13.    The investigation revealed that, shortly thereafter, BANKS and ▬▬▬▬ devised a scheme to exploit ▬▬▬▬ official position with OPSO by having ▬▬▬▬ take checks from within OPSO without authorization and give the checks to BANKS so that BANKS could use her methods to deposit the checks and convert the checks into cash. The checks taken by ▬▬▬▬ were physical checks that were already in existence, having been created by the OPSO finance department to pay grant money to organizations that were involved, or would be involved, in providing health and wellness training at the Orleans Justice Center.

14.    As part of their agreement, **BANKS** gave a portion of the proceeds from the checks ▬▬▬▬ took to him after **BANKS** arranged for the checks to be converted to cash.

15.    Text messages between ▬▬▬▬ and BANKS reveal the scope and nature of their embezzlement scheme.

16.    For example, during the following correspondence on June 11, 2024, ▬▬▬▬ and BANKS discussed their joint effort to deposit grant checks that ▬▬▬▬ stole from OPSO:

| Sender | Date | Message Body |
|---|---|---|
| BANKS | 11-Jun-24 | Don't forget<br>I could send that instantly |
| ▬▬▬▬ | 11-Jun-24 | Ok |
| BANKS | 11-Jun-24 | The problem is depositing two grants at 1 bank it's rare I figured it out so once they confirm the funds it'll go back to normal<br>I got the account and route ready<br><br>And on some business stuff bruh foreal if you want get ey together let's do that but don't be the person that try to cut me out on things for whatever personal reason we can go far together if not that's cool but it seems like every time I school you one something you take the knowledge and take off and still have to come back feel me I'm not greedy  at all |

| | | |
|---|---|---|
| | | I want to see you up but you gotta want the same for me if this one-sided let me knowbc I got mouths to feed to so if I'm helping you finesse you gotta look out for me also ITS FREE at the end of the day everything that we did together as of recent went smooth it's when you do things by yourself that you get tangled up in for your safety and mines communication is key I wouldn't be a real mf if I ain't shared how I fell about the situation I just don't want to be out here helping people eat that don't even want me at the table. |
| BANKS | 11-Jun-24 | I got 50k that you coulda put in that Gulf Coast account. Why both yall account is in 999999.99 negative is bc you and him deposit the same type of check at the same branch (gulf coast) and it looks rare when too many of the same company checks come to the same company that's a flag it's not like Walmart or other com slips so that's why those 2 are like that just to let you know. |
| ████ | 11-Jun-24 | IMAGE |
| | 11-Jun-24 | IMAGE |
| BANKS | 11-Jun-24 | That's ai talk to a real person that works in the bank for years<br>It looks suspicious bc two different ppl with the same type of check deposit into the same branch think about it nobody else account did that<br>And mines with USAA did that bc it was two checks of the same kind which is rare that's all once they go through the motion of making sure there's no charge back the account wil go back.<br>So let's just move on to the next chapter that's pay out they can't hold paid funds longer than 60 days or they have to stop payment which they can't do once it's paid so that just just a waiting thing that you just have to stay upon without really forcing the issue<br>The ACH we good on that that's a steady account citi bank is a really good bank. |
| ████ | 11-Jun-24 | I'm about to hit you up. |
| BANKS | 11-Jun-24 | Ok I'll be up. |

*Decarceration of Incarcerated Trauma Check*

17.     On or about July 31, 2024, an OPSO check in the amount of $15,000 was deposited into an account in the name of ████████ at USAA, a financial services company. The

check was dated June 12, 2024, and was made payable to a subgrantee, "Decarceration of Incarcerated Trauma":



ORLEANS PARISH SHERIFF'S OFFICE
GENERAL FUND ACCOUNT
2800 PERDIDO ST
NEW ORLEANS, LA 70119

4640

DATE June 12, 2024

PAY TO THE ORDER OF    Decarceration of Incarcerated Trauma    $ ***15,000.00***

Fifteen Thousand Dollars****************00/100********************** DOLLARS

CapitalOne
Capital One, N.A.

SHERIFF

⑈004640⑈ ⑈065000090⑈ 81 25 11645⑈

18.    Prior to the deposit of the check above, ▓▓▓▓ account at USAA had a balance of $2.22.

19.    A person claiming to be ▓▓▓▓ contacted USAA at least six (6) times between July 31, 2024 to August 9, 2024, regarding when USAA would remove a hold and release the deposited funds, including calling on on August 4, 2024, to request USAA "release funds early due to a family emergency," and calling on August 5, 2024 to speak with someone because she was having an unspecified emergency.  USAA informed ▓▓▓▓ the funds had been released on August 9, 2024.

20.    While the check deposit was pending, BANKS and ▓▓▓▓ engaged in correspondence via text about the status of the deposit and subsequent release of funds, including the following:

    a.    On August 4, 2024, **BANKS** sent a text message to ▓▓▓▓ stating, "I'll call ▓▓▓▓ since it's been verified to see if they can release funds early," to which ▓▓▓▓ replied "Ok."

b.  On August 10, 2024, ▆▆▆▆ sent a text message to **BANKS** asking "Are we clear?" BANKS responded "Yeah I'm a hit you once the bread is clear. I gotta meet with the head she gon need her id."

21.  Between about August 9, 2024, and August 12, 2024, over $13,000 of the deposited funds were withdrawn from the ▆▆▆▆▆ account at USAA.

22.  ▆▆▆▆ and BANKS exchanged the following messages between about August 11, 2024, and August 13, 2024, regarding BANKS providing ▆▆▆ his portion of the proceeds from the theft of the Decarceration of Incarcerated Trauma checks and subsequent withdrawal:

| Sender | Date | Message Body |
|---|---|---|
| BANKS | 11-Aug-24 | Thank you for your patience and allowing me to handle the biz |
| ▆▆▆ | 11-Aug-24 | Its good.<br>I have to take care of tomorrow. So hopefully we can move today. |
| BANKS | 11-Aug-24 | Is good<br>We clear |
| ▆▆▆ | 11-Aug-24 | Ok!<br>Let me know when you ready to meet.<br>I will be on the West Bank in about a hr or so. Let me know.<br>Ok.<br>Everything good? |
| ▆▆▆ | 13-Aug-24 | GM good people. I was $100 short. |
| BANKS | 13-Aug-24 | Never.<br>Never count that.<br>I counted that ey several times bruh no way |
| ▆▆▆ | 13-Aug-24 | I can understand how it could have been missed. It was 29 $100. |
| BANKS | 13-Aug-24 | In which stash bro<br>You had 150 twenties |
| ▆▆▆ | 13-Aug-24 | Yea the 20's was right.<br>It was just the $100 bills was off by 1. |

23.  On about August 15, 2024, ▆▆▆▆ deposited $6,000 of cash into his personal account at Gulf Coast Bank & Trust:



*Rise Collective Check*

24.    On or about August 26, 2024, another OPSO check in the amount of $15,000 was deposited into the ████ account at USAA via mobile deposit. The check was also dated June 12, 2024, but was made payable to a different subgrantee, "Rise Collective."

25.    At the time of the "Rise Collective" deposit, ████ account had a balance of $1.95.

26.    In October 2024, BANKS and ████ exchanged the following text messages:

| Sender | Date | Message Body |
|---|---|---|
| The Device | 21-Oct-24 | So it's looking like I just gotta get someone to make me documents and send em off right bc the bread is there and I ain't do all that work and have my info in systems to not get paid so ima just move forward bc imma not hearing from you is getting to me cause I wouldn't leave you with loose ends<br>So it's cool if we split that last play 3 ways ? |
| The Device | 22-Oct-24 | Anything yet? |
| ████ | 22-Oct-24 | Give me 2hrs. |
| BANKS | 22-Oct-24 | Can you send to my email |
| ████ | 22-Oct-24 | It's clean |
| BANKS | 22-Oct-24 | What you mean it was processed?<br>4641<br>Rise Collective |

| | | | You got the confirmation so they can release it within 7 days<br>And I did research a stale check is considered anything over 6 ths from the date on check<br>Hit me back up I'm on the phone with the bank please! |
|---|---|---|---|
| ███ | 22-Oct-24 | | Hang up<br>Talking to them now |
| BANKS | 22-Oct-24 | | Capital 1?<br>Now they saying they return the funds from the deposit<br>I'm recording so you can hear if need be to know everything that's going on |
| ███ | 22-Oct-24 | | No<br>My team<br>I'm coming |
| BANKS | 22-Oct-24 | | Ohh ok ok<br>Call me when you get a chance<br>Yoooo<br>I need to know what's being said on your side gang like you not saying anything with these ppl talking bout something with capital one and I'm trying to make sure everyone on the same accord like this shit serious<br>Dude you can't be serious<br>SO did you or anybody from that side call capital informing them that funds from a grant was deposited into an unauthorized account??? |
| ███ | 23-Oct-24 | | No<br>That's what was said? |
| BANKS | 23-Oct-24 | | We can still do my LLC tho huh ? |
| ███ | 23-Oct-24 | | Yea |

27.     As of February 2024, $14,525 of the "Rise Collective" deposit remained in the account.

*The Deposit and Subsequent Withdrawal of the Checks Were Unauthorized*

28.     When interviewed, OPSO officials reported that ███████ was not, directly or indirectly, authorized to receive funds for performing subgrantee work.  Moreover, OPSO had no reason to believe ███ had actually performed subgrantee work.  OPSO further reported that they did not authorize, and were unaware, that either of the checks referenced above, to

"Decarceration of Incarcerated Trauma" and the "Rise Collective," had been deposited into ▓▓▓▓ account. OPSO explained that it had not authorized the issuance of funds for deposit into ▓▓▓▓ account.

*Attempted Embezzlement from the United States Department of Justice and Attempted Bank Fraud*

29.     On or about August 10, 2023, the United States Department of Justice awarded OPSO a $3.907 million Byrne Discretionary Grant entitled "Technology, Equipment, and Programming Improvements to Support People in Custody and Streamline Reentry" ("DOJ grant"). The purpose of the grant was, in part, to "aid in supporting the health and wellness of people in custody. . .". Funding was available to OPSO under the grant until the specified grant performance period end date of April 30, 2025.

30.     On or about July 30, 2024, ▓▓▓▓ incorporated with the State of Louisiana, and thereafter controlled and served as the registered agent and managing member for, an entity entitled ▓▓▓▓▓▓▓▓▓▓▓▓ At no point did ▓▓▓▓▓▓ have a relationship, or provide services to or on behalf of, OPSO.

31.     On the same day, ▓▓▓▓ opened a business checking account in the name of ▓▓▓▓▓▓ at Gulf Coast Bank & Trust Co. ("Gulf Coast"), a financial institution based in Jefferson Parish, Louisiana whose deposits are protected by the Federal Deposit Insurance Corporation (FDIC) ("the ▓▓▓▓▓▓ Account").

32.     ▓▓▓▓ independently embezzled $82,000 from OPSO from July 30, 2024 to August 30, 2024 by causing to be issued and deposited into the ▓▓▓▓▓▓ account two (2) physical checks from OPSO.

33.     In about November 2024, ████ and **BANKS** then effectuated a scheme to obtain funds directly from the DOJ grant fraudulently and by exposing Gulf Coast Bank to risk of civil liability or financial loss.

34.     On or about November 13, 2024, ████, in his professional capacity with OPSO, engaged in a digital transaction that requested that the DOJ draw down on the DOJ grant by providing a payment in the amount of $100,000 to the ████ account. ████ did not inform his supervisors of his intent to direct grant money to an entity he controlled, and he was not authorized to disseminate any portion of the DOJ grant to himself or any entity under his control.

35.     The Department of Justice sent the funds to the financial account ████ requested via wire transfer on or about November 13, 2024.

36.     Shortly before ████ submitted the transaction request to the Department of Justice, he contacted Gulf Coast Bank and informed a representative that a $100,000 wire transfer would soon be sent to the ████ Account.

37.     Gulf Coast Bank placed a hold on the transaction without informing ████ The $100,000 wire transfer to the ████ account was pending as of November 13, 2024.

38.     On or about November 15, 2024, a Gulf Coast Bank representative requested that ████ identify an OPSO representative who could verify that OPSO intended for such a large sum to go ████ entity.

39.     Thereafter, ████ communicated with **BANKS** by phone call and text message. ████ and **BANKS** agreed that **BANKS** would contact Gulf Coast Bank and pose falsely as an OPSO employee, M.V., who approved the transaction.   In exchange, ████ agreed to give **BANKS** a portion of the ill-gotten proceeds.

40.    ███████ sent detailed instructions to **BANKS** via text message on how to pose as M.V. that included the following headings: "1. Introduction; 2. Role of ██████████; 3. Payment Terms; 4. Recent Award; 5. Closing Statement/Inquiry."

41.    Shortly thereafter, a female contacted Gulf Coast Bank, falsely claimed to be M.V., and attempted to execute the plan **BANKS** and ███████ devised by telling a Gulf Coast Bank representative, in sum and substance, that OPSO approved the transaction when, in fact, OPSO was unaware of, and had not approved, the transaction.

42.    OPSO was unaware of, and had not approved, the transaction.

43.    ████████████████████████████████████████████████████████
████████████████████

## **CONCLUSION**

44.    For the foregoing reasons, I submit that probable cause exists to believe that **AREION BANKS** committed and attempted to commit theft concerning a program receiving federal funds, in violation of Title 18, United States Code, Section 666(a)(1)(A), bribery concerning a program receiving federal funds, in violation of Title 18, United States Code, Section 666(a)(2), wire fraud, in violation of Title 18, United Staes Code, Section 1343, bank fraud, in violation of Title 18, United Staes Code, Section 1344, attempt to commit the above-described offenses, and conspiracy to commit those offenses, in violation of Title 18, United States Code, Section 371.

45.    Accordingly, I request that the Court issue a criminal complaint alleging the above listed offenses. I swear under penalty of perjury that the foregoing are true and correct to the best of my knowledge, information, and belief.

Sworn to under the pains and penalties of perjury,

_/s/Brent R. Korhn_
Brent R. Korhn
Special Agent
Federal Bureau of Investigation

Pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3), the undersigned judicial officer has on this date considered the information communicated by reliable electronic means in considering whether a complaint, warrant, or summons will issue. In doing so, I have placed the affiant under oath, and the affiant has confirmed that the signatures on the complaint, warrant, or summons and affidavit are those of the affiant, that the document received by me is a correct and complete copy of the document submitted by the affiant, and that the information contained in the complaint, warrant, or summons and affidavit is true and correct to the best of the affiant's knowledge.

Subscribed to and sworn before me,
This  13th  day of June, 2025.
New Orleans, Louisiana.

HONORABLE JANIS VANMEERVELD
UNITED STATES MAGISTRATE JUDGE